17-290-cv
*SEC v. Payton*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of February, two thousand eighteen.

PRESENT:   PIERRE N. LEVAL,
                    GUIDO CALABRESI,
                    JOSÉ A. CABRANES,
                                *Circuit Judges.*

_____

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

    *Plaintiff-Appellee,*         17-290-cv

    v.

DARYL M. PAYTON, BENJAMIN DURANT, III,

    *Defendants-Appellants.*

_____

| | |
|---|---|
| **FOR PLAINTIFF-APPELLEE:** | DAVID D. LISITZA, Senior Litigation Counsel (Michael A. Conley, Solicitor, Jacob R. Loshin, Senior Counsel, Kerry J. Dingle, Counsel, *on the brief*), *for* Robert B. Stebbins, General Counsel, United States Securities and Exchange Commission, Washington, DC. |
| **FOR DEFENDANT-APPELLANT BENJAMIN DURANT, III:** | GREGORY MORVILLO, E. Scott Morvillo, Morvillo LLP, New York, NY. |

1

**FOR DEFENDANT-APPELLANT**
**DARYL M. PAYTON:** MATTHEW E. FISHBEIN (Sean Hecker, Rushmi Bhaskaran, Laura E. O'Neill, Debevoise & Plimpton LLP, New York, NY, Noam B. Greenspan, Petrillo Klein & Boxer LLP, New York, NY, *on the brief*), Debevoise & Plimpton LLP, New York, NY.

Appeal from a judgment and post-judgment order of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the May 16, 2016 judgment and November 29, 2016 post-judgment order of the District Court be and hereby are **AFFIRMED**.

Defendants-appellants Daryl M. Payton and Benjamin Durant, III (jointly, "Defendants") appeal from a May 16, 2016 judgment of the District Court holding them civilly liable for insider trading under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, and a November 29, 2016 post-judgment order denying their motion for a judgment as a matter of law or for a new trial. On appeal, Defendants argue that the judgment of liability should be vacated, in part because, based on the evidence presented at the seven-day trial, no reasonable jury could have concluded that plaintiff-appellee United States Securities and Exchange Commission ("SEC") proved the existence of a duty of trust and confidence, a breach of that duty in exchange for personal benefit, or that Defendants had the requisite scienter. Defendants also appeal a jury instruction and two evidentiary rulings. Upon review, we conclude that Defendants' arguments are without merit. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## BACKGROUND

In 2009, Michael Dallas, an associate at Cravath, Swaine & Moore LLP ("Cravath"), was working on IBM's highly confidential, proposed, all-cash acquisition of SPSS, Inc. ("SPSS"), a publicly traded software company. Dallas told a friend, Trent Martin, about it. Martin passed the information to his roommate, Thomas Conradt. Conradt, a broker at Euro Pacific Capital, proceeded to share the information with several individuals at his firm, including Defendant Payton. The information also made its way to Defendant Durant. Defendants Payton and Durant then purchased short-term options in SPSS based on the information, as Payton admitted at trial. Joint App'x at 524–25. Following the buyout, Defendants Payton and Durant pocketed $243,860 and $606,351, respectively, by exercising their options.

The SEC later brought civil claims against Defendants for insider trading. As relevant here, the SEC proceeded under the theory that Martin received the information from Dallas, the Cravath associate, in confidence, and was the first to pass the information to another with the expectation that it would be misused. According to the SEC, Martin shared the information with Conradt as a tip, and benefited either from making a valuable gift to a close friend or by an exchange for several favors. According to the SEC's theory, Defendants were derivatively liable for trading on the tips because they were aware that the information very likely had been obtained through a breach of duty for personal benefit, but nevertheless consciously or recklessly avoided learning about the information's source.

The jury found Defendants liable for insider trading. Following entry of the final judgment, Defendants moved for a judgment as a matter of law under Federal Rule of Civil Procedure 50(b) or, alternatively, a new trial under Federal Rule of Civil Procedure 59. Defendants argued that judgment as a matter of law was appropriate because the SEC had not presented sufficient evidence for a reasonable jury to find, *inter alia*, that: (1) Martin had breached a duty of trust and confidence to Dallas; (2) Martin had provided the tip to Conradt in exchange for a personal benefit; and (3) Defendants knew or should have known that the source of the tip was a breach of trust and confidence for personal benefit.

On November 29, 2016, the District Court, *inter alia*, denied the Rule 50(b) and 59 motions. This appeal followed.

## STANDARD OF REVIEW

We review *de novo* a district court's denial of a Rule 50 motion for judgment as a matter of law. *Kinneary v. City of New York*, 601 F.3d 151, 155 (2d Cir. 2010). We may only grant the motion if "the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in [the opposing party's] favor." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998). In so doing, we "'must give deference to all credibility determinations and reasonable inferences of the jury,' and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 51 (2d Cir. 2000) (quoting *Galdieri-Ambrosini*, 136 F.3d at 289).

We review a district court's denial of a Rule 59 motion for a new trial for abuse of discretion. *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012). "A district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." *Chin v. Port Auth. of NY & NJ*, 685 F.3d 135, 146 (2d Cir. 2012) (internal quotation marks omitted).

3

We review a claim of error in jury instructions *de novo*, and will "revers[e] only where, viewing the charge as a whole, there was a prejudicial error." *Terra Firma Investments (GP) 2 Ltd. v. Citigroup Inc.*, 716 F.3d 296, 299 (2d Cir. 2013).

Finally, we review a district court's evidentiary rulings for abuse of discretion, and "will reverse only if an erroneous ruling affected a party's substantial rights." *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005).

## DISCUSSION

### I. Defendants' Motion for a Judgment as a Matter of Law

On appeal, in support of their entitlement to JMOL, Defendants proffer numerous testimonial excerpts and interpretations of exhibits that, *if credited*, would undercut the SEC's theory of the case. For example:

- Martin testified that he thought Dallas wanted him to trade on the information, Joint App'x at 2819, and sent a text to Dallas about "hit[ting] that stock," *id.* at 503–06, which suggests, according to Defendants' argument, that Martin did not owe Dallas any legally cognizable duty to keep the information confidential. *Cf. Salman v. United States*, 137 S. Ct. 420, 423 (2016) ("Section 10(b) of the Securities Exchange Act of 1934 and the Securities and Exchange Commission's Rule 10b-5 prohibit undisclosed trading on inside corporate information by individuals who are under a duty of trust and confidence that prohibits them from secretly using such information for their personal advantage.").

- Conradt and Martin were casual acquaintances who met through Craigslist, Conradt had deceived Martin about rent payments, Joint App'x at 2809–10, and both testified that the benefits Martin received from Conradt were unrelated to the tip, *id.* at 409–11, 417–18, 2808–09, all of which suggests that Martin did not receive a personal benefit from Conradt in exchange for the tip. *Cf. Salman*, 137 S. Ct. at 427 ("[T]he disclosure of confidential information without personal benefit is not enough.").

- Payton testified that rumors about buyouts are routine, Joint App'x at 606, and Conradt's fellow brokers considered him "green," which suggests that the SEC could not establish that Defendants consciously avoided learning about the source of the tip. *Cf. SEC v. Obus*, 693 F.3d 276, 287 (2d Cir. 2012) ("[A] tippee has a duty to abstain or disclose 'only when the insider has breached his fiduciary duty . . . and the tippee *knows or should know* that there has been a breach.'" (quoting *Dirks v. SEC*, 463 U.S. 646, 660 (1983) (alteration and emphasis in original))).

4

But, of course, the jury was not required to find this testimony credible or accept Defendants' glosses. It was, instead, free to weigh all the evidence presented during the trial and "believe part and disbelieve part of any witness's testimony." *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007). Here, that means that the jury was free to credit the testimony and evidence that supported the SEC's theory and draw reasonable inferences that favored the SEC's theory.

For instance, the jury could have credited Dallas's testimony that he did not expect Martin to trade on or share with others the confidential information, Joint App'x at 2878, 2887, and inferred, in part from Dallas's anger at learning Martin had traded on the information, *id.* at 2891, that Martin had a duty to Dallas to keep the information secret. And it could have inferred a *quid pro quo* from emails that Conradt sent to help Martin secure counsel following an arrest that threatened his visa. *Id.* at 1269–72. And it could have inferred conscious avoidance from the fact that Payton and others who purchased SPSS stock met in a hotel room the evening of the buyout announcement to conspire about concealing their trades, and later lied about the source of their information. *Id.* at 403–07, 649–55, 860–62.

"Where there are conflicts in the testimony, we must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011). Accordingly, we affirm the District Court's denial of Defendants' motion for a judgment as a matter of law under Rule 50.

## II.     The Jury Instruction and Evidentiary Rulings

Defendants next argue that the District Court gave an erroneous and prejudicial jury instruction, and made two prejudicial evidentiary rulings. Defendants appear to suggest that these purported errors warrant *vacatur* of the jury verdict and the entry of an order granting the motion for a new trial under Rule 59. We are not persuaded.

The District Court instructed the jury that the SEC had to prove five elements, including (1) "that Trent Martin owed a duty of trust and confidence to the original source of the material nonpublic information, namely, Michael Dallas," and (2) "that Trent Martin breached that duty by disclosing that information to Thomas Conradt." Joint App'x at 1154. Contrary to what Defendants contend, this jury instruction did not tell the jury it could find that Martin owed Dallas a duty of trust and confidence not to pass on the information even if Dallas intended Martin to trade on the information. The instruction expressed no view on that question. Rather, the instruction accurately articulated the elements of the claim. And "[w]here a district court's jury instructions accurately track the language and meaning of the relevant statute, we generally will not find error." *United States v. Alfisi*, 308 F.3d 144, 150 (2d Cir. 2002).

Defendants' contentions that the District Court abused its discretion in evidentiary rulings do not affect our disposition. As for the exclusion of Payton's supposed expression of surprise that

Conradt's tip had been accurate, we conclude that the District Court did not abuse its discretion when it reasoned that the hearsay exception for expressions of a declarant's "then-existing state of mind," Fed. R. Evid. 803(3), was not available because Defendants failed to lay a foundation showing that the witness Conradt was in a position to observe whether Payton's statement expressed actual or feigned surprise. Joint App'x at 447. In any event, whether Payton was, or was not, surprised to learn that Conradt had been the source of a valuable tip had little bearing on the issues for resolution by the jury.

As for the receipt into evidence of Weishaus's post-arrest statements, his plea allocution, and his text message exchanges with Conradt, these were either admissible under Federal Rule of Evidence 804(b)(3), as statements Weishaus "would have made only if [he] believed [them] to be true because . . . [of their] tendency . . . to expose [Weishaus] to civil or criminal liability," *see* Fed. R. Evid. 804(b)(3)(A), or, to the extent this was less clear as to portions of the statements directed to Defendants' conduct, because they were insufficiently prejudicial when considered in the context of the overall evidence to affect our disposition. As for Weishaus's report of a meeting among persons who had traded on the information at which Defendant Durant urged adoption of a common innocent explanation, Durant acknowledged in his own testimony that this took place, disputing only his motive for doing so.

We thus reject Defendants' challenges to the jury instruction and evidentiary rulings, and conclude that the District Court did not abuse its discretion in denying Defendants' Rule 59 motion.

## CONCLUSION

Having reviewed all of the arguments raised by Defendants Payton and Durant on appeal, we **AFFIRM** the May 16, 2016 judgment and November 29, 2016 post-judgment order of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6